# PRACTICE REPORTS.

## SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK agt. WILLIAM FONTAINE BRUFF, THE BROOKLYN ELEVATED RAILWAY COMPANY and others.

*Action against directors, &c., of a corporation for misconduct — By whom action to be brought — When attorney-general must bring action — Power of the court to appoint a receiver — Practice — Code of Civil Procedure, sections* 1781, 1782, 1808, 1810.

The attorney-general, in behalf of the people of the state, may maintain an action "against one or more trustees, directors, managers or other officers of a corporation to procure a judgment * * * compelling the defendants to account for their official conduct in the management and disposition of the funds and property committed to their charge," and "compelling them to pay the corporation which they represent, or its creditors, any money, and the value of any property which they have acquired to themselves, or transferred to others, or lost or wasted, by a violation of their duties," and "suspending a defendant from exercising his office when it appears that he has abused his trust" (*Code of Civil Procedure, sections* 1781, 1782).

By section 1808 of the Code of Civil Procedure the attorney-general "*must* bring an action" for the purposes just enumerated, "if, in his opinion, the public interests require that an action should be brought;" and by section 1810, in an action brought for the objects specified, by the attorney-general, the court has power to appoint a receiver of the property of the corporation.

When the president of a railroad company makes a contract with himself for the construction of a railway; when he obtains all the securities, stock and bonds under the pretense of paying the nominal contractor; when as chief engineer he makes to himself as contractor certificates of work done, and then as president pays himself many hundred thousand dollars in advance of what the nominal contractor was entitled to receive under the contract for construction, ample cause is shown for the appointment of a receiver, and the command of the statute to the attorney-general that he "*must bring an action*," becomes imperative.

Although it is true that, under section 1782 of the Code of Civil Procedure, a creditor of the corporation, or a trustee, director, manager or other officer of the corporation could bring an action, not to suspend or remove a director, but to recover for the corporation the assets and property which its officers had wasted, it is:

*Held*, that an action which had been so brought by K., one of the directors and one of the defendants herein, in which P., one of the defendants herein was made receiver, is no bar to the action brought by the state through its attorney-general as required by section 1808 of the Code.

*Ulster Special Term, November,* 1880.

MOTION by plaintiffs for a receiver.

*S. W. Knevals, Ashbel Green, George W. Wingate* and *E. Lauterbach,* for motion.

*Thomas M. North, H. H. Morse* and *A. Schoonmaker,* opposed.

WESTBROOK, *J.* — The application for a receiver and an injunction in this action was made, and the questions involved therein fully argued three days since, but the pressure of other official duties prevented an immediate examination, and the continuance of such pressure precludes as full a discussion of its merits as would otherwise be attempted.

The Brooklyn Elevated Railway Company was originally incorporated by a special act of the legislature of this state, passed on the 26th day of May, 1874 (*chapter* 585 *of Laws of* 1874), which original act of incorporation was amended in 1875 (*chapter* 422, *Laws of* 1875), and in 1879 (*chapter* 350 *of Laws of* 1879).

By its charter the said railway company was "authorized and empowered to construct, maintain and operate an elevated railway between the proposed terminus on the Brooklyn side of the East River Suspension Bridge and Wood Haven, in the town of Jamaica, county of Queens and state of New York," the route between such points being designated, subject to

an alteration thereof by the common council of the city of Brooklyn.

The complaint charges official misconduct and waste of the property of the company by the officers thereof, W. Fontaine Bruff, W. Hawkins Bruff, Henry V. Bruff, Richard G. Phelps and Edwin S. Keeler, and asks: 1st. That such officers, they being defendants in the action, should be compelled to account for their official conduct in the management of the corporation and its property. 2d. That they should also be suspended from their offices. 3d. That the corporation and the said officers should be enjoined from receiving any debt or demand due to the railway company, and from paying out or transferring any money or property belonging to it. 4th. That a receiver or receivers of the property of the defendant, the Brooklyn Elevated Railway Company, be appointed by the court with the usual powers of receivers in like cases; and 5th. That the plaintiffs shall have such further or other relief in the premises, as to the court shall seem just, together with the costs of this action.

The present motion is for an injunction and receiver, and is brought to a hearing upon an order to show cause, granted on the 30th day of October, 1880. In the disposition thereof the following points will be considered: 1st. The power of the court to grant the relief asked. 2d. The facts proved; and 3d. The objections made to the present application.

By sections 1781 and 1782 of "the Code of Civil Procedure" the attorney-general, in behalf of the people of the state, may maintain an action "against one or more trustees, directors, managers or other officers of a corporation to procure a judgment * * * compelling the defendants to account for their official conduct in the management and disposition of the funds and property committed to their charge," and "compelling them to pay to the corporation which they represent, or its creditors, any money, and the value of any property which they have acquired to themselves, or transferred to others, or lost or wasted, by a violation of their

duties," and "suspending a defendant from exercising his office when it appears that he has abused his trust," and for various other purposes as are in said section 1781 specified.

By section 1808 of the Code it is declared that the attorney-general "*must* bring an action" for the purposes just enumerated, and, also, for other purposes mentioned in such section, "if, in his opinion, the public interests require that an action should be brought;" and by section 1810, in an action brought, for the objects specified, by the attorney-general, the court has power to appoint a receiver of the property of the corporation.

These provisions make it clear that the application is regular, provided the facts shown justify it. What is established?

The Messrs. Bruff and Keeler are now directors of the company. W. Fontaine Bruff was the president and chief engineer of the company, and the defendant Richard G. Phelps was a director until a very recent day.

On September 1, 1879, the railway company executed a mortgage to The Farmers' Loan and Trust Company of the city of New York to secure bonds of $1,000 each, to the amount of $3,500,000, but by the terms of the mortgage and the bonds issued thereunder the issue of such bonds was to be limited and confined to 350 bonds for each mile of said railroad.

The contract for the construction of the railway bears date the 7th day of February, 1879, and purports to have been made with Robert B. Floyd-Jones. By its terms the contractor was to be paid for each completed mile of road by the issue and delivery to him of 350 bonds of $1,000 each, and $500,000 of the capital stock of said company, but the issue was not to be in advance of the completion of the road unless the bonds were sold ; in which case the proceeds were to be paid out no faster to the contractor than as the work was completed.

Prior to the actual execution of the contract with R. B. Floyd-Jones for the construction of the road, and on the 24th

day of December, 1878, the said contractor had in writing assigned said contract to the defendant W. Fontaine Bruff, then and afterwards the president and chief engineer of the railroad company, as the same was "set forth in letters and documents dated from 11th to 24th December (1878) instant;" and after the actual execution of such contract of construction, and on the very day of the date thereof (February 8, 1879), the said Floyd-Jones made another and formal assignment thereof to the said Bruff. Both assignments were to Bruff, as trustee, but who the parties interested were, if other than Bruff, does not appear.

The interests of the corporation in the execution of the contract were entrusted to W. Fontaine Bruff, W. Hawkins Bruff, Harry V. Bruff, Richard G. Phelps and Edwin S. Keeler; and they also obtained all the stock and bonds of the company.

Not a single mile of railroad has yet been built, but $1,203,000 of the mortgage bonds have been issued, also $225,000 of scrip bonds, and capital stock to the amount of $5,000,000; and obligations to issue and deliver stock to the amount of $1,500,000 more have also been delivered. In other words, after an expenditure of stock and bonds to the amount of $7,928,000, not a mile of road is completed, and the 26th day of May, 1881, by which date the structure must be finished under penalty of forfeiture of charter, is rapidly approaching.

The contracts for the construction of the road purport to be signed by W. Fontaine Bruff, as president of the railway company, in its behalf, and by R. B. Floyd-Jones in his own. The certificates, under which hundreds of thousands of dollars have been paid to the assignee of the contract, W. Fontaine Bruff, are signed by himself thus: "W. Fontaine Bruff, C. E., Engineer-in-Chief."

Many other facts are shown, but they will not be herein recited, as those which have been stated are sufficient to warrant action. When the president of a railroad company

makes a contract with himself for the construction of a railway; when he obtains all the securities, stock and bonds under the pretense of paying the nominal contractor; when as chief engineer he makes to himself as contractor certificates of work done, and then as president pays himself many hundred thousand dollars in advance of what the nominal contractor was entitled to receive under the contract for construction, ample cause is shown for the appointment of a receiver, and the command of the statute to the attorney-general that he "must bring an action," becomes imperative.

Now, what answer is made to the application? None of the facts herein detailed are denied. On the contrary, they are all admitted, but it is claimed that Mr. Edwin S. Keeler, one of the defendants herein, had already brought a suit against the Messrs. Bruff and The Brooklyn Elevated Railway Company, making allegations similar to those made in this action, in which Mr. Richard G. Phelps, one of the defendants herein, was made receiver, and afterwards, on the petition of said Phelps, as receiver, Mr. Wagstaff was made a coreceiver with him, and, therefore, the present motion should be denied.

Before dealing with the legal questions which have been presented in connection with this objection, it is well to see who and what Messrs. Keeler and Phelps are.

Edwin S. Keeler, though a director of said company, was an employe of his codefendant Richard G. Phelps, holding one share of stock therein transferred to him by W. Fontaine Bruff. He was made a director on the second Tuesday in June, 1880, but Mr. W. Fontaine Bruff held his written agreement to resign as director whenever Bruff requested him so to do.

Richard G. Phelps was a director of the corporation during its gross mismanagement by Bruff, and was either cognizant, or ought to have been, of the whole thereof. As receiver he will be called upon to investigate his conduct as director, and however much he may be disposed to act fairly, he occu-

pies the singular and impossible position of representing interests as receiver, which are in direct antagonism to his own as an individual (*McArdle* agt. *Barney*, 50 *Howard Pr.*, 97; *see pages* 103, 104). Phelps had also signed a written agreement to resign as director whenever Bruff demanded it, thereby evidencing his subserviency to the very party towards whom he professes to occupy a position of antagonism.

Various parties had threatened legal proceedings when Mr. Keeler instituted his action with, as the facts fully satisfy me, the full consent, approbation and co-operation of Bruff. In that suit, as has been previously stated, Mr. Phelps, and afterwards Mr. Wagstaff was added, was made receiver. Of course, in making that appointment, the court was uninformed of Mr. Phelps and Mr. Keeler's connection with the very frauds which they alleged, and in utter ignorance thereof its order was made. Ought that order to be a bar to this application?

It is true that, under section 1782 of the Code, Mr. Keeler, as a director of the corporation, could bring an action, not to suspend or remove a director, but to recover for the corporation the assets and property which its officers had wasted; but the attorney-general can also bring an action for that purpose, and for the additional one of suspending and removing directors. The action begun by Keeler can only afford partial relief at best; and though it was brought in good faith and for the purposes it professes, which I do not believe, I should be loath to hold that it was a bar to the one brought by the state, which alone can grant complete relief. Is a remedial statute, passed for grave and salutary reasons, to be nullified by any such narrow construction as that on which this objection rests? Is it possible that the officers who have defrauded a corporation can, when they fear action by the attorney-general, cause a suit to be instituted by one of their confederates, place all the property and assets of the corporation, by a formal order of the court, but made by a suppression of truth, into the hands of another confederate, and thus controlling all

as much as ever, successfully defend an honest suit by the highest law officer of the state to protect honest creditors and shareholders? If this can be done, then justice is mockery and laws are mere waste paper. Besides, section 1808 of the Code requires the attorney-general, as we have already said, to bring this action. Upon that duty no restraint or limitation whatever is put, and that cannot be a sound construction of another section of the same statute giving permission to another person to bring an action for some of the same purposes, which makes one brought thereunder a bar to that which a high state official is imperatively commanded to institute.

Rule 87 of this court is also cited in opposition to this motion. That rule was adopted prior to the present Code. The latter, as has been already shown, gives the court full power to appoint a receiver in this action; and no rule of the court, prior or subsequent, can modify the statute.

Perhaps, if Rule 87 were literally construed, as the principal place of business of the corporation is at No. 48 Wall street, New York city, the appointment of receivers in the Keeler action, which was in Kings county, was bad. There is no occasion, however, so to hold. The rule does not abrogate the statute, and any construction thereof which would permit a collusive receivership and a collusive suit to bar a *bona fide* application by the attorney-general will not be adopted, even though its language, literally construed, favored the objection more strongly than it does, and though the Code had not since been enacted. Very clearly neither the spirit nor intent of the rule favors the defendants. It was adopted to promote justice and not injustice, and it requires a substantial and honest previous appointment to be a bar to a new application, and no fraudulent cover under the forms of law can prevent the recovery of a corporation's property from the possession of dishonest officers thereof.

No order is asked to remove receivers appointed in another action. What is demanded is an appointment in this action, and that relief must be granted. Which, whether those

appointed in this or in the other action, shall hold and take the property is a question for another proceeding. A collusive suit, and a collusive prior appointment, cannot bar action looking to justice. The honest creditors must be protected, and such person or persons as they may nominate will be appointed for the trust.

No reflection whatever is intended to be made upon Mr. Wagstaff. No complicity in past actions with the officers of the defendant corporation is shown, but he was appointed at their instance and by their request, with the intent, probably, on their part, to give a color of fairness to their proceeding. If he is continued he can only be with the consent of those who hold the honest obligations of the corporation, and by severing his connection with those with whom he is associated.